(981 P.2d 266)

No. 79,642

CALVIN KENNEDY, *Appellant*, v. KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, AND CHERYL SEWARD, *Appellees*.

Opinion filed April 9, 1999.

*Patrick C. Smith*, of Spigarelli, McLane & Short, of Pittsburg, for the appellant.

*Kenneth R. Smith*, of Kansas Department of Social and Rehabilitation Services, for the appellee Kansas Department of Social and Rehabilitation Services.

*James F. Savage*, of Kansas Department of Social and Rehabilitation Services, for the appellee Cheryl Seward.

Before ELLIOTT, P.J., PIERRON, J., and CHIPMAN, S.J.

PIERRON, J.: The plaintiff, Calvin Kennedy, sued the defendants, Kansas Department of Social and Rehabilitation Services (SRS) and Cheryl Seward, an SRS employee, for damages arising from an SRS investigation and subsequent criminal prosecution alleging that the plaintiff had sexually abused a resident of the facility. The trial court granted summary judgment for both defendants. We affirm.

The plaintiff was employed at the Residential Center for Youth in Pittsburg. Beginning in November or December 1992, SRS and the Crawford County Sheriff's Department jointly investigated allegations by a resident that the plaintiff had sexually abused her. Initially, SRS social worker Deanna Wiley investigated. Seward took over Wiley's position during the investigation in February 1993. SRS confirmed abuse and on March 1, 1993, recommended to the county attorney that charges be filed. The plaintiff was charged on March 3, 1993, arrested, and arraigned, but the criminal complaint was dismissed on October 1, 1993.

On October 3, 1994, the plaintiff filed suit against defendants alleging negligence in the investigation, false arrest and malicious prosecution, defamation, intentional infliction of emotional distress, and interference with his employment. The trial court issued summary judgment for defendants, finding that *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 938 P.2d 1293 (1997), and *Burney v. Kansas Dept. of SRS*, 23 Kan. App. 2d 394, 931 P.2d 26 (1997), controlled. The court ruled that while SRS did not thoroughly investigate and did not convey all agency records to the sheriff's department, the defendants did not owe a duty to the plaintiff and were immune from liability under the Kansas Tort

Claims Act (KTCA), K.S.A. 75-6101 *et seq.* Additionally, the court found that the claims for false arrest and defamation were barred by the statute of limitations, and the plaintiff failed to state claims for defamation and intentional infliction of emotional distress. The plaintiff appeals the trial court's rulings regarding duty and immunity.

Summary judgment is appropriate when the record conclusively shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, 829, 877 P.2d 430 (1994). Courts may treat a fact as uncontroverted if the party disputing it fails to cite factual authority for support. 255 Kan. at 830. In order to preclude summary judgment, the facts in dispute must be material to conclusive issues in the case. On appeal, we apply the same rules. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131, 955 P.2d 1189 (1998).

An analysis of the defendants' potential liability for negligence under the KTCA begins and ends with duty. A tort is a breach of a duty imposed by law. *Mills v. City of Overland Park*, 251 Kan. 434, 445, 837 P.2d 370 (1992). In order to be liable for negligence, a defendant must owe a duty of care to the injured plaintiff. The existence of a duty is a question of law, and we have unlimited review of questions of law. *Burney*, 23 Kan. App. 2d at 397.

Generally, law enforcement and social services officials owe a legal duty only to the public at large. *DeShaney v. Winnebago Cty. Soc. Servs. Dept.*, 489 U.S. 189, 103 L. Ed. 2d 249, 109 S. Ct. 998 (1989); *Mills*, 251 Kan. 434, Syl. ¶ 5. Under the public duty doctrine, officials have no duty to any individual except where circumstances create a special relationship or specific duty. 251 Kan. at 446 (distinguishing *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 [1986]). Where there is no duty, there can be no breach.

The KTCA immunizes the State and its agents from liability for discretionary functions *unless* an independent duty of care is owed to the injured party. K.S.A. 1998 Supp. 75-6104(d) and (e). The plaintiff relies on *Fudge v. City of Kansas City*, 239 Kan. 369, in his claim that procedures outlined in the Kansas Manual of Youth

Services (KMYS) imposed a mandatory duty on SRS investigators to review all SRS files in the course of their investigation of allegations of child abuse, thus creating a special duty to him. In *Fudge*, the Supreme Court held that while a law enforcement officer generally owes a duty only to the public at large, internal policies impose a mandatory duty on the officer, which creates a special duty to an individual injured by the officer's failure to adhere to the policies. 239 Kan. at 372. At that time, K.S.A. 75-6104 (Ensley 1984) read as follows:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(d) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused."

The *Fudge* court reasoned that where police department guidelines dictated that an arrest should be made, the officer had a mandatory duty to make the arrest, and the discretionary function exception did not apply.

In 1987, the Kansas Legislature responded with clarifying amendments to K.S.A. 75-6104. The following was added as new subsection (d):

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(d) adoption or enforcement of, or failure to adopt or enforce, any written personnel policy which protects persons' health or safety unless a duty of care, independent of such policy, is owed to the specific individual injured, except that the finder of fact may consider the failure to comply with any written personnel policy in determining the question of negligence."

The former subsection (d) became subsection (e) and was amended (as shown by italics) to read: "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion *is* abused *and regardless of the level of discretion involved*." (Emphasis added.) K.S.A. 1998 Supp. 75-6104(e) (subsection [e] not changed since amended

in 1987). *Jarboe* recognizes that the 1987 amendment was intended to clarify the discretionary function exception after *Fudge*, if not legislatively overrule *Fudge*. In light of the amendment, a written policy does not impose on a public servant a special duty to an individual. Thus, the procedures outlined in KMYS do not impose a mandatory duty on SRS investigators. The mandatory terms of KMYS are pursuant to a public duty. *Burney*, 23 Kan. App. 2d at 401.

The plaintiff attempts to distinguish the controlling cases of *Burney* and *P.W.* by suggesting that Seward's "affirmative act" of recommending to the county attorney that he file charges created a special duty. He overlooks the Restatement's requirement that the defendant undertake to render service to the plaintiff. See *P.W.*, 255 Kan. at 833-34 (discussing application of Restatement [Second] of Torts § 324A [1964]); *Burney*, 23 Kan. App. 2d at 399. If Seward's recommendation created a special duty on this theory, the duty was to the alleged victim, not to the plaintiff.

"Since the law is clear that SRS owes no duty to abused children, it surely owes no duty to an alleged abuser." 23 Kan. App. 2d at 398. Therefore, the defendants cannot be held liable to the plaintiff for negligence.

The manner of investigating a charge of child abuse is a discretionary function. *Burney*, 23 Kan. App. 2d at 402-03. If there was fault in conducting the investigation, no liability may be predicated on that fault; SRS is immune from liability for damages resulting from negligence or malicious prosecution. 23 Kan. App. 2d at 403.

The plaintiff attempts to distinguish *Burney* by suggesting SRS did not recommend charges be filed in *Burney*. The trial court rejected this argument as "a distinction that doesn't make a difference" because the county attorney is not compelled to file charges on the recommendation of SRS. The trial court's reasoning is sound.

The plaintiff also attempts to distinguish his case by arguing the purpose of the KMYS procedures is to promote an open, fair, and objective investigation and not to protect anyone's health and safety. We disagree. The clear purpose of the investigation, and

thus procedures for investigation, is to protect the health and safety of the alleged child victim.

Finally, the plaintiff argues the trial court erred in finding defendants acted without malice. Even if individual defendants are not immune from liability under the KTCA, they have immunity under the Kansas Code for Care of Children in the making of a report of abuse or participation in any follow-up or investigation if they act without malice. K.S.A. 38-1526. The public policy of this state is to encourage reporting of possible child abuse. It is vital that the courts not chill the prompt reporting of incidents of abuse. *Clevenger v. Catholic Social Services of the Archdiocese of Kansas City*, 21 Kan. App. 2d 521, 529, 901 P.2d 529 (1995). It is also the public policy not to encourage false and malicious reports, so immunity extends only to defendants who act without malice. 21 Kan. App. 2d at 529-30. In the absence of direct evidence of malice or evidence from which to infer that the defendant had reason to act maliciously toward the plaintiff, summary judgment will be upheld. 21 Kan. App. 2d at 531.

In *Burney*, this court followed *Clevenger* and held that (1) malice may not be shown by the mere fact that SRS investigated a report of abuse or that some individuals were negligent in their investigation and (2) in an action for malicious prosecution, the plaintiff must produce direct evidence of malice or prove facts which show a defendant had a motive or reason for acting maliciously in reporting the alleged abuse. 23 Kan. App. 2d at 405. The plaintiff here has offered no evidence of malice beyond the fact that SRS investigated, confirmed abuse, and recommended criminal charges.

Affirmed.